# Union National Bank of Pittsburgh, Appellant, *v.* Crump et al.

Argued March 24, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*O. K. Eaton,* with him *John Gilfillan,* for appellant.

*Ben Paul Brasley,* of *Brasley, Rubin, Balter & Cole,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 22, 1944:

This is an appeal from the decree of the court below fixing the fair market value, under the Act of July 16, 1941, P. L. 400, 12 PS Supp. 2621, of mortgaged premises sold on foreclosure. The premises involved are located at 4041 Bigelow Boulevard, in Pittsburgh, on which there is erected a residential apartment house

known as the Schenley Arms. The mortgage, created in 1931, was given by the defendants Crump and McQuillan to secure the loan to them by plaintiff of $175,000. The premises were conveyed, subsequent to the mortgage, to the Schenley Arms Improvement Company, the third defendant, by which they were operated. Default having occurred, the rents were collected by plaintiff from 1932 to the date of sale, although it did not formally take possession as mortgagee until 1937. While the rents were being collected by plaintiff, the defendants expended $22,500 in 1937 to enlarge and improve the building.

In March, 1943, plaintiff entered judgment on the bond accompanying the mortgage and instituted foreclosure proceedings. The premises were sold at sheriff's sale on May 3, 1943, and purchased by plaintiff for $3,113.45, which was applied to costs and taxes. Damages on the judgment were assessed at $191,776.54, later reduced by stipulation of credit to $182,731.66.

On June 17, 1943, plaintiff filed its petition to have the court fix the fair value of the premises, alleging this value to be $117,500. Defendants denied this allegation in their answer and asserted that the fair value was $220,000. Upon this issue testimony was taken in the court below. Plaintiff's experts variously estimated the fair value of the premises on the date of the sheriff's sale at $120,000 and $119,000, stating that they based their opinions on several elements of value including location, construction, possible uses, income, and area of the building. An officer of plaintiff testified that an offer of $117,500, representing the best and only offer received by plaintiff for the premises, had been received on June 1, 1943, and accepted subject to the approval of the Orphans' Court.

Four experts for the defendants respectively valued the property at $220,000, $218,375, $205,670, and $204,000. During the course of the hearings the trial judge

visited the premises for the purpose of properly evaluating the testimony. At the conclusion of the hearings he filed an order fixing the fair value at $190,000 as of the date of sale. Exceptions were filed by plaintiff, which the court en banc, one judge dissenting, dismissed. This appeal followed.

In an appeal from an order fixing the fair value of mortgaged premises under the Act of 1941, supra, the review by this Court is limited to a determination of whether the evidence is sufficient to sustain the findings of the court below, and whether there is a reversible error of law. The proceedings are purely statutory, and as the legislature has not provided for appellate review, an appeal is in the nature of certiorari in its broadest sense: *Fleming v. Prospect Park Board of Adjustment*, 318 Pa. 582, 178 A. 813; *Bangor Electric Co.'s Petition*, 295 Pa. 228, 145 A. 128; *Re Elkland Leather Workers Assn., Inc.*, 330 Pa. 78, 198 A. 13.

Considering the record as a whole, in that light, the order is supported by sufficient competent evidence and must be affirmed. Appellant complains of many statements in the opinion of the trial judge and of the court en banc, which, taken from the context, create a false impression of the reasoning which underlies the orders. On this appeal, however, we are concerned solely with the correctness of the order appealed from, and whether it is founded upon a reversible error of law. See *Davis v. Shenandoah Boro.*, 273 Pa. 501, 117 A. 207; *Jones v. Weir*, 217 Pa. 321, 66 A. 550. The opinions themselves, while perhaps not worded with meticulous care, reveal no fundamental error.

It is contended that the court below substituted its own judgment, arbitrarily, for that of the real estate experts because it found a wide variance in their testimony. Despite unfortunate statements of the trial judge which are the basis for this contention, it is most apparent that he merely exercised his proper function of

evaluating all of the testimony, including the opinions of the experts, and determining the fair value on the whole record. He was not bound to adopt the opinion of any one expert, or group of experts.

Appellant objects that no consideration was given by the court below to the offer of sale, and that the decree was based entirely upon the testimony as to gross rentals. The offer, unquestionably, had evidentiary value, but it was not conclusive of the fair value of the premises at the time of the sheriff's sale. The Act of 1941 requires the court to determine the "fair market value" of the premises, without defining such value. This phrase has, however, been interpreted by this Court to mean the price which the property would bring at a fair sale between parties dealing on equal terms. See *Appeal of Pennsylvania Company, etc.,* 282 Pa. 69, 127 A. 441. Many elements properly enter into the determination of "fair market value". Among these are recent sales of real estate of comparable location and description: *Serals v. School District,* 292 Pa. 134, 140 A. 632. No evidence of such sales was offered in this case. Other factors of value include (1) the uses to which the property is adapted and might reasonably be applied: *Appeal of Pennsylvania Co., etc.,* supra; (2) the demand for the property and similar properties, taking into consideration economic conditions which depress market value in its true sense and detrimentally influence such demand: *Metropolitan Edison Co.'s Appeal,* 307 Pa. 401, 161 A. 303; (3) the income produced by the property, including rents, and (4) generally, all elements which affect the actual value of property and therefore influence its fair market value: *Metropolitan Edison Co.'s Appeal,* supra.

It is true that the court below placed great emphasis on the gross rentals received from the property. Obviously, in view of the large operating costs involved in the operation of an apartment house such as this, gross

rentals alone would not provide a fair index of fair market value. This was not, however, the only factor considered by the court in making its order. The opinion shows that the trial judge and the court en banc considered the uses of the building, its construction, its valuable location for residential purposes, the condition of the apartments, the manner of their operation, and other elements of value disclosed by the evidence, as well as the opinions of the expert witnesses. There is a sufficient evidentiary basis for the value of $190,000 placed upon the property, and it is therefore immaterial whether this Court would have reached the same conclusion had it been the trier of the facts.

Appellant complains that the trial judge took it upon himself to inspect the premises during the hearing and that, as a result thereof, considered matters outside the record on the basis of his personal observation. It is true that in his opinion the trial judge stated that his inspection had revealed the facts to be contrary to those stated by some of the witnesses, and that he drew extensively upon his knowledge of the locality in describing the advantageous situation of the apartments. Obviously, he was influenced by his observations in weighing the testimony before him. It does not appear, however, that reversible error was committed. Appellant did not object at the hearing when the trial judge stated that he had inspected the property, and does not, on this appeal, assign this as error or discuss it in its brief of argument. In passing, however, it may be said that the court below has correctly stated in its opinion the law pertaining to such personal inspections by the trial judge of the premises involved in proceedings of this sort: "We do not believe that it is error for a trial judge, in cases such as that before us, to view and inspect the real estate in question, provided he does not substitute his own findings of fact for the facts testified to by witnesses, and provided he does not include in his

findings of fact something about which there is no testimony." Subject to these qualifications, it is not improper for the trial judge to inspect the premises in order that he may better understand and evaluate the testimony of the witnesses.

The order appealed from is affirmed at appellant's cost.